# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

JERRY FRANKLIN JOHNSON,
    Plaintiff,

v.                                                          **Civil Action No. 3:15cv53**
                                                               **(Groh)**

DAVID PROCTOR, MD and
WEXFORD HEALTH SOURCES, INC.,
    Defendants.

## REPORT AND RECOMMENDATION

On May 5, 2015, Plaintiff, Jerry Franklin Johnson ("Plaintiff"), by counsel, filed a complaint initiating this civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff was granted leave to proceed *in forma pauperis* on June 2, 2015, and summonses were issued to counsel for service. On June 30, 2015, Defendants filed a Motion to Dismiss. On July 20, 2015, Plaintiff filed a response [ECF No. 20], and on August 6, 2015, Defendants filed a reply. ECF No. 13. On August 14, 2015, Plaintiff filed a "Brief Response to Defendants' Reply." ECF No. 14. However, pursuant to LR Civ P 7.02(3), parties shall not file surreply memoranda except by leave of court, and pursuant to LR PL P 11.4, surreply and surrebuttal memoranda may not be filed. Accordingly, the undersigned has not considered Plaintiff's August 14, 2015, memorandum.

### I.    Contentions of the Parties

**A.    Plaintiff's Complaint**

Plaintiff, who was released from the custody of the State of West Virginia on March 26, 2015 [ECF No. 2 at 5], raises claims of deliberate indifference to his medical needs while housed at the Huttonsville Correctional Facility. Plaintiff alleges that on May 19, 2012, he fell in the kitchen of the prison facility and suffered a laceration on his forehead and injuries to his head and right

shoulder. Plaintiff maintains that following his fall, he was escorted to the medical unit where he was seen and treated with steri-strips to close the laceration on his forehead and Tylenol for pain. Plaintiff further alleges that he was seen in medical nearly one year later on April 12, 2013, when he asked to see a doctor. He was seen by Defendant Proctor on April 19, 2013, who ordered a shoulder x-ray. Plaintiff indicates the x-ray showed no bone abnormalities and no broken or cracked bones. Plaintiff alleges that following the x-ray, he made numerous visits/requests to medical on May 27, 2013, May 12, 2014, May 13, 2014, May 21, 2014, June 10, 2014, June 22, 2014, July 2, 2014, July 9, 2014, and July 14, 2014, asking for help for his pain in both his head and right shoulder.

Plaintiff alleges that his constant pain, which he suffered from May 19, 2012, through his release on March 28, 2015, constitutes cruel and unusual punishment and violates his rights under the Eighth and Fourteenth Amendments. Plaintiff further alleges that Defendant Proctor never responded to his frequent complaints of head pain and requests for treatment of the head pain. Moreover, Plaintiff alleges that although there was some treatment of his right shoulder problem, the pain persisted. Finally, Plaintiff alleges that Defendant Proctor "seemed to have followed Wexford's policies of considering costs over treatment, and not responding to requests for treatment until after three visits by an inmate to medical." ECF No. 1 at 4.

Plaintiff maintains that as a direct and proximate cause of Defendants' actions, due to Defendants' deliberate indifference, he has suffered pain which caused serious physical, psychological and emotional harm, mental anguish, distress, humiliation and indignity. For relief, he seeks $ 300,000 in compensatory damages for his pain and suffering and $500,000 in punitive damages for the Defendants' failure to address his pain and suffering due to their corporate policies.

**B.     Defendants' Motion to Dismiss**

Defendants alleges that the complaint must be dismissed because:

1. Plaintiff's claims are barred by Statute of Limitations;

2. Plaintiff's allegations against these Defendants are threadbare recitals of the elements of a cause of action supported by conclusory allegations, and are not entitled to the presumption of truth.

3. The Plaintiff has failed to state a claim to relief under § 1983 because Wexford and Dr. Proctor in his official capacity are not 'persons' under the act.

4. The Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) because the Plaintiff has not alleged facts sufficient to demonstrate an entitlement to relief under 42 U.S.C. § 1983 for allegations of a violation of his Eighth Amendment rights against cruel and unusual punishment.

ECF No. 10.

**C. Plaintiff's Response**

In response to Defendant's Motion to Dismiss, Plaintiff argues that his complaint is timely, because the time during which he was exhausting his administrative grievance tolled the two year statute. Plaintiff further argues that Wexford has a policy of "considering costs over treatment," and therefore, Defendants ignored his constant complaints about considerable head pain. Plaintiff notes that a private corporation is liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of federal rights. Finally, Plaintiff contends that he continuously had head pain which was ignored by Defendants and constitutes deliberate indifference.

**D. Defendants' Reply**

In reply, Defendants allege Plaintiff has failed to state a claim for relief under § 1983 because Wexford is a private entity performing a function for a state agency and is the functional equivalent

of the state. Therefore, Defendants argue that the decision in Will v. Michigan Dep't of state Police, 491 U.S. 58 (1989) applies and because Defendants have been sued in their official capacity, they are not persons for purposes of 1983.

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1999)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely

4

"conceivable," id.

In order for a complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### III.    Analysis

**A. Statute of Limitations**

Defendants assert that Plaintiff's complaint should be dismissed because it was filed beyond the statute of limitations. For purposes of determining the appropriate statute of limitations, claims filed pursuant to 42 U.S.C. § 1983 are analogous to "general personal injury actions." Wilson v. Garcia, 471 U.S. 261, 279 (1985). Thus, their timeliness is determined based upon the relevant state limitations period for personal injury actions. W.Va. Code § 55-2-12(b) provides:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) within two years next after the right to bring the same shall have accrued if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party dies, it could not have been brought at common law by or against his personal representative.

5

On first impression, Plaintiff's claims against Defendants appear to be outside the two-year applicable statute of limitations. The complaint clearly states Plaintiff was injured on May 19, 2012, and was escorted to the medical unit where he was seen and treated with Tylenol for pain and steri-strips to close the laceration of his forehead. According to his complaint, Plaintiff reported to medical on April 12, 2013, when he asked to see a doctor. Thereafter, Dr. Proctor ordered a shoulder x-ray on April 19, 2013, and he was given a shot in his right shoulder. Furthermore, Plaintiff alleges that he has had pain in his head, behind his eyes, and in the back of his neck since the fall on May 19, 2012. Given Plaintiff's allegation that he has suffered pain since that fall, it is reasonable to assume that he was aware of his claim on that date, or soon thereafter. However, he did not initiate this complaint until May 5, 2015, three years later.

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time

---

[1] Porter v. Nussle, 534 U.S. 516, 524 (2002).

and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 548 U.S. at 92 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 93.

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

While a Bivens plaintiff pursues his administrative remedies, as he is obligated to do by the PLRA, the otherwise applicable statute of limitations is tolled. Young v. Thompson, No. 2:10cv66, 2011 WL 3297494 (N.D.W. Va. July 29, 2011)(citing Johnson v. Lappin, 2011 WL: 560459 (S.D.W. Va. Jan. 6, 2011)); see Lopez v. S.C.D.C., No. 3:06251-PMD-JRM, 2007 WL 2021875 *2 (D.S.C. 2007) ("The Fourth Circuit has not addressed the issue of whether the statute of limitations for a § 1983 action should be equitably tolled while a prisoner is exhausting the administrative process. However the 'uniform holdings of the circuits that have considered the question' typically tolls the statute of limitations.") citing Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005)).

On May 7, 2013, Plaintiff initiated a grievance which outlined his fall and indicated that he has been suffering severe headaches that have a dizzying effect on him. He further noted that his head still hurts and he is unable to use his shoulder properly since the fall. The grievance was answered by

health services on May 13, 2013. Plaintiff appealed to the warden on June 5, 2013, who accepted the grievance that same date and affirmed the unit. The grievance was thereafter accepted at the central office and denied on or about July 2, 2013. ECF No. 1-2 at 2. Plaintiff filed a second grievance on May 20, 2014, seeking treatment from an outside medical provider to evaluate his injuries and prescribe an adequate course of treatment. That grievance was denied by the medical unit on June 3, 2014, affirmed by the warden on June 10, 2014, and the central office on or about July 2, 2014. ECF No. 1-2 at 5. Finally, Plaintiff filed a grievance on July 14, 2014, seeking to have a CT scan done on his head. That grievance was rejected by health services on July 14, 2014, the warden on July 17, 2014, and the central office on or about August 6, 2014. ECF No. 1-2 at 8.

Therefore, based on the principles outlined above, the statute of limitations was tolled until at least July 2, 2014, when Plaintiff's first grievance was denied by the central office. Therefore, Plaintiff's complaint, which was filed on May 5, 2015, was filed with the applicable two-year statute of limitations and is not untimely. Accordingly, to the extent Defendants seek dismissal based on the statute of limitations, the same is without merit.

**B. Official Capacity**

Defendants allege that Plaintiff has failed to state a claim to relief under § 1983 because Wexford and Dr Proctor, in his official capacity, are not persons under the act. 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

> declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982).

The United States Supreme Court has held that state officials sued in their official capacities do not constitute "persons" within the language of 42 U.S.C. § 1983. Will v. Michigan, 491 U.S. 58 (1989). In its decision, the Court considered a suit against a state official in his or her official capacity the equivalent of a suit against the state itself. Id. at 68. The Court concluded that, absent any congressional intent to override states' immunity, the eleventh amendment bars § 1983 suits against state employees in their official capacity. Id. at 64-65. The Court specified that "[c]onstruing § 1983 as a remedy for 'official violation of federally protected rights' does no more than confirm that the section is directed against state action-action 'under color of' state law. It does not suggest that the State itself was person that Congress intended to be subject to liability." Id. at 68.

Although it is clear that Will bars § 1983 suits against state officials in their official capacities, the distinction between what constitutes an official capacity as opposed to an individual capacity suit remains unclear. Courts must consider whether the plaintiff is truly suing the state-naming the state actor only as an agent or representative of the state-or whether the alleged violation resulted from specific acts or decisions of the named official. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citations omitted). Courts must analyze whether the complaint alleges that the state official "acted either outside the scope

9

of his respective office or, if within the scope, acted in an arbitrary manner, grossly abusing the lawful powers of office." Scheuer v. Rhodes, 416 U.S. 232, 235 (1974). A negative response to both questions would implicate Will and bar suit.

In this particular case, the undersigned recognizes that Plaintiff specifically states in his complaint that "Proctor is sued in his official capacity." ECF No. 1 at 2. In addition, Plaintiff states that "Wexford is sued in its official capacity due to its policies regarding the treatment of inmates at Huttonsville." Id. While the Court could construe the complaint strictly and dismiss this action pursuant to Wills, the undersigned is of the opinion that a fair reading of the entire complaint suggests that Plaintiff has actually stated a claim against Proctor in his personal capacity as having abused his authority as a physician charged with providing medical care to state inmates housed at the Huttonsville Correctional Center. In addition, it appears that Wexford is a state actor for purposes of § 1983. See West v. Atkins, 487 U.S. 42, 54 (1988) (holding a private entity which contracts with the state to provide medical services acts "under color of state law.") Moreover, Plaintiff has alleged that Wexford has a policy of considering costs over treatment and not responding to requests for treatment until after three visits by an inmate to medical. ECF 1 at 4. "According to the Fourth Circuit Court of Appeals, 'a private corporation [which is a state actor] is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights.'" Page v. Kirby, 314 F.Supp.2d 619, 622 (N.D.W.Va. 2004) (quoting Austine v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1989). Accordingly, to the extent Defendants seek dismissal of this action based on the concept of "official capacity," the undersigned respectfully disagrees with their position..

## C. Deliberate Indifference

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v.

Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[1]

---

[1] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v. Armstrong, 143 F.3d 698, 702 - 703 (2nd Cir. 1998). A degenerative hip condition that caused a prisoner "great pain over an extended period of time and . . . difficulty walking" is a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. Giambalvo v. Sommer, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. See, e.g., Lepper v. Nguyen, 368 F. App'x. 35, 39 (11th Cir. 2010); Andrews v. Hanks, 50 Fed. Appx. 766, 769 (7th Cir. 2002); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) Beaman v. Unger, 838 F.Supp. 2d 108, 110 (W.D. N.Y. 2011); Thompson v. Shutt, 2010 WL 4366107 at *4 (E.D. Cal. Oct. 27, 2010); Mantigal v. Cate, 2010 WL 3365735 at *6 (C.D. Cal. May 24, 2010) *report and recommendation adopted,* 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); Johnson v. Adams, 2010

11

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

Here, viewing the allegations in the complaint in the light most favorable to Plaintiff, as required, it appears that he has proven the objective prong necessary to prove an Eighth Amendment claim of deliberate indifference because his head, neck and/or shoulder injuries could be sufficiently serious medical needs. Wilson, 501 U.S. at 298; see also Scarbro v. New Hanover County, 274 Fed. Appx. 366, 371 (4th Cir. 2010) (injury from a head-first fall onto concrete was an objectively serious medical need; autopsy afterward showed an acute subdural hematoma and neck fracture).

---

WL 1407787 at *4 (E.D. Ark. Mar. 8, 2010) report and recommendation adopted, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); Bragg v. Tyler, 2007 WL 2915098 at *5 (D.N.J. Oct. 4, 2007); Vining v. Department of Correction, 2013 U.S. Dist. LEXIS 136195 at *13 (S.D.N.Y. 2013)(chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis). A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need. Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991). Mandel v. Doe, 888 F.2d 783 (11th Cir. 1989)(a fracture in the hip joint which required surgery was a serious medical need). Estelle v. Gamble, 429 U.S. 97, 107 (1976)(whether an x-ray and different forms of treatment should have been given for prisoner's back injury at most constituted negligence). Scarbro v. New Hanover County, 374 Fed. Appx. 366, 371 (4th Cir. 2010) (injury from a head-first fall onto concrete, with a scream of pain and broken glasses; followed by bleeding from a cut above the eye; incontinence of urine and the inability to speak coherently or walk afterwards was an objectively serious medical need; autopsy afterward showed an acute subdural hematoma and neck fracture). But see Clark v. Maryland Dep't. of Public Safety and Correctional Services, 316 Fed. Appx. 279, 282 - 83 (4th Cir. 2009) (unpublished) *per curiam* (passing out in cell and hitting head, but able to communicate clearly afterwards, with no visible injury, sign of distress or discomfort was not a serious medical need).

However, Plaintiff has failed in his burden to prove the second, subjective prong of the Eighth Amendment analysis because he cannot show that Defendants were deliberately indifferent. Plaintiff's complaint appears to be that he did not receive treatment as quickly as he would have liked and/or that he was dissatisfied with the type of care give. However, it is clear from the limited medical record before the undersigned that Defendant Proctor was responsive to Plaintiff's needs, and Plaintiff was seen promptly and repeatedly for his complaints of injuries from the fall.

First, Plaintiff received steri-strips immediately after the fall and was treated with Tylenol. While he may believe that stitches were in order, there is no indication that the wound failed to close Moreover, although Plaintiff complains that he was in constant pain, he has presented nothing to indicate that he sought medical treatment between May 19, 2012, the date of the fall, and April 12, 2013, nearly one year later, when he asked to see a doctor. As a result of the April 12, 2013, visit to medical, Defendant ordered a shoulder x-ray on April 19, 2013, the results of which showed no bone abnormalities, and no broken or cracked bones. Plaintiff was also given shot in his shoulder. Plaintiff again has presented nothing to indicate that he sought medical treatment for either his head, neck or shoulder for more than a year thereafter, until he requested an MRI on the 12th and 13th of May, 2014. In addition, he requested to see a chiropractor on May 21, 2014, and again requested an MRI on May 27, 2014, June 10, 2014, July 9, 2014, and July 14, 2014. In addition, he requested a CT scan on June 22, 2014. The fact that his requests for an MRI, CT scan and appointment with a chiropractor were denied, does not demonstrate deliberate indifference. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation. See Chance v. Armstrong, 143 F.3d 698, 703 (citing Dean v. Coughlin, 804 F.2d 207, 215 (2nd Cir. 1986) and Estelle 429 U.S. at 106. "The constitution does not command that

inmates be given the kind of medical attention that judges would wish to have for themselves...." "[T]he essential test is one of medical necessity and not simply of desirability." Dean, 804 F.2d at 215 (citations omitted) (alterations in original). Furthermore, the medical care required by Estelle need not be the best possible care, it only has to be "reasonable" care. Vinnedge v. Gibbs, 550 f.2d 926 (4th Cir. 1977); see also Blanks v. Cunningham, 409 F.2d 220 (4th Cir. 1969); Edwards v. Duncan, 355 F.2d 993 (4th Cir. 1966).

In conclusion, "[t]o establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A plaintiff must establish more than ordinary negligence on the part of prison authorities in responding to his medical needs to establish a claim of medical mistreatment Eighth Amendment. Brewer v. Blackwell, 836 F. Supp. 631, 642 (S.D. Iowa 1993). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

### IV.   Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motion To Dismiss [ECF No. 9] be **GRANTED** in so far as it raises the defense that Plaintiff has failed to establish an Eighth Amendment violation regarding medical care; and Plaintiff's Complaint [ECF No 1] be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985) <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record via electronic means.

DATED: November 17, 2015.

                                                            */s Robert W. Trumble*
                                                           ROBERT W. TRUMBLE
                                                           UNITED STATES MAGISTRATE JUDGE